IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 11-cv-00300-WYD-MEH

MARGARET MILLER and
FORREST MILLER,

    Plaintiffs,

v.

STEVE HARTLEY, Warden Arkansas Valley Correctional Facility,

    Defendant.

## ORDER ON SUMMARY JUDGMENT

I.    <u>INTRODUCTION</u>

    This case involves a claim for a violation of the right to freedom of association. It arises from the fact that Plaintiffs, a mother and her son, were denied visitation with each other when Plaintiff Forrest Miller was incarcerated at the Colorado Department of Corrections ["CDOC"]. The Complaint seeks prospective injunctive relief requiring Defendant to permit Plaintiffs to have contact visitation. It does not seek monetary damages. A two-day trial to the Court is currently set for October 1 and 2, 2012.

    On November 30, 2011, Defendant filed a Motion for Summary Judgment that is fully briefed. For the reasons stated below, Defendant's motion is granted.

II.    <u>FACTUAL BACKGROUND</u>

    Before addressing the facts, I note that in addition to the facts stated in Defendant's summary judgment motion, Defendant's reply contains a "Statement of

Additional Material Facts." This is not authorized pursuant to Section III.B.6 of my Practice Standards, and Defendant did not seek leave of the Court to assert these new facts. Plaintiffs did not, however, object to these additional facts. Accordingly, while I considered the new facts, I note that they were not dispositive to any of my rulings on the summary judgment motion.

I also have not discussed every fact tendered by the parties, only those that are most material to my findings. Further, where the facts are unsupported by evidence, such as in the introductory sections of the motion and Plaintiff's response, or are argumentative or conclusory, I have disregarded those facts. I now turn to the facts.

Plaintiff Margaret Miller ["Mrs. Miller"] is the mother of Plaintiff Forrest Miller, an inmate incarcerated in the Colorado Department of Corrections ["CDOC"]. (Compl., ECF No. 1, ¶ 3.) She is 79 years old, and lives in California. (Decl. of Margaret Miller, ¶ 1, Ex. 1 to Pls.' Resp. to Mot. for Summ. J. [hereinafter "Miller Decl."])

Forrest Miller has been convicted of several counts of sexual assault on a child. Mr. Miller's three sons were the victims of his crimes. (Compl., ¶ 5.) Mrs. Miller was never charged with or convicted of an offense, including any offenses changed in Mr. Miller's criminal case. (Miller Decl., ¶ 3). She also was not told she was a "co-defendant" or "co-conspirator" with Mr. Miller. (*Id.*) Further, no social worker, court or other official in California told Mrs. Miller that she could not have custody of her grandchildren because she was a child molester. (*Id.*, ¶ 2.)

Plaintiffs assert that Mrs. Miller never acted in any sexually inappropriate way with any children, including her own children and grandchildren. (Miller Decl., ¶ 2.)

Indeed, the Complaint alleges that Mrs. Miller was not even in the same state when the alleged actions giving rise to Mr. Miller's criminal case took place. (Compl., ¶ 6.)

Defendant denies Plaintiffs' assertion that Mrs. Miller did not act in any sexually inappropriate way with children, citing the August 24, 2005 Memorandum from Henry Ybarra, a licensed social worker, to Shirley Steinbeck, a Policy Coordinator for the CDOC, attached as Exhibit 2 to the Response Brief. The Memorandum states that Mr. Ybarra received a call from the Visiting Room Officer regarding Mrs. Miller, who had visited her son that day, wanting to know if Mrs. Miller was a co-conspirator in Mr. Miller's crime. (*Id.*) Mr. Ybarra stated in response to this issue:

> I contacted Ms. Amanda Kohen, Child Welfare, Fremont County Human Services, for additional information. Ms. Kohen indicated that she contacted her supervisor who recalled the case and advised Ms. Kohen that she (supervisor) and the case investigator opined that, despite Mrs. Miller's denial of the allegations, the incidents of "having the boys fondle her breasts" likely occurred while in her care. The case was also reported to California authorities where Mrs. Miller lived; inmate Miller was also investigated for molesting his 8-year-old niece in Orange County in 1996.

(*Id.*)

In or about May 2003, after Forrest Miller was resentenced to the CDOC, Mrs. Miller received a telephone call from his case manager telling her that Forrest had been diagnosed with throat cancer. (Miller Decl., ¶ 2.) She got on the next plane to Colorado, but could only stay in Colorado for two weeks. (*Id.*) Forrest Miller was in a coma in the hospital for about a week, and was then transferred to the prison infirmary. (*Id.*, ¶¶ 4, 5.) No one at that time told Mrs. Miller that she could not visit Forrest Miller because she was a sex offender or his "co-defendant." (*Id.*)

Mrs. Miller was then able to see Forrest Miller at the Arkansas Valley Correctional Facility ["AVCF"]. (Miller Decl., ¶ 6.) She tried to come visit about every year for a week at a time. (*Id.*) Attached to Mrs. Miller's Declaration is the printout of her visits with Forrest Miller that Defendant produced in discovery. While Mrs. Miller states she has no reason to dispute the accuracy of the printout, she does remember coming to visit Forrest Miller more than just the three trips in June 2004, August 2005 and September 2007. (*Id.*, ¶ 7.) During these visits, Mrs. Miller was never accused of breaking any prison rule or acting inappropriately. (*Id.*) No staff member told her that she could not visit Forrest because she was a sex offender or his "co-defendant." (*Id.*)

On August 24, 2005, Henry Ybarra send his Memorandum to the AVCF Visiting Room Policy Coordinator. He stated that in light of the information he learned from the Child Welfare office regarding Mrs. Miller's involvement in Forrest Miller's criminal case, discussed above, he recommended that visits between Mrs. Miller and Forrest Miller "be terminated indefinitely." (Ex. 2 to Resp. Br.) Mr. Ybarra further stated, "The family's history is replete with sexual abuse and exploitation of children and adults." (*Id.*)

Despite Mr. Ybarra's Memorandum, Mrs. Miller was allowed to visit Forrest Miller on August 25, 26, 27 and 28, 2005, and for four days in September 2007. (Miller Decl., Att. 1.) Mrs. Miller could not come out to Colorado in 2008, and when Forrest Miller tried to set up the visitation request for 2009, the Millers were told that Mrs. Miller had to submit another application for visitation. The Complaint alleges that Plaintiffs thus had to resubmit paperwork for Mrs. Miller to be approved as a visitor, and that this an "application" for visitation. (Compl., ¶¶ 9, 10.) Defendants deny that this paperwork

constituted a formal "application" for visitation.  Although Plaintiffs do not provide any evidence on this issue, the Complaint alleges that their "application" for visitation was denied or about June 22, 2010, by the AVCF Visiting Officer.  (*Id.*, ¶ 10.)

Plaintiffs further assert, without citing any actual evidence, that they "appealed" this determination by the AVCF Visiting Officer.  (*See* Compl., ¶ 11.)  On or about September 11, 2010, Plaintiffs received a memorandum from Defendant, the prison Warden, indicating that "after careful consideration, I am denying your request" to visit Mr. Miller.  (*Id.*, ¶ 10.)  Plaintiffs assert that the Warden's response denied their "appeal" (Miller Decl., ¶ 9), which Defendant denies.  Defendant alleges that the decision not to permit visitation was made pursuant to the recommendation of Henry Ybarra, a mental health staff member.  (Aff. of Penny Spearing, ¶ 3, Ex. A-1 to Mot. for Summ. J [hereinafter "Spearing Aff."])

Plaintiffs assert that the September 11, 2010 letter from Warden Steve Hartley came as a complete shock to Mrs. Miller.  (Miller Decl., ¶ 10.)  Mrs. Miller could not believe that she was denied visitation after so many years of being able to see Forrest Miller without anything ever going wrong.  (*Id.*)

In September of 2011, Mrs. Miller's request to be allowed visitation with her son, Forrest Miller, was re-evaluated.  (Spearing Aff., ¶ 4.)  On September 22, 2011, Mrs. Miller was notified in writing that the prohibition against visitation with her son would be lifted, and that she would be approved to have visitation as long as she complied with the normal policy and procedures of visitation requirements.  (*Id.*, ¶ 5; September 22, 2011 Letter to Mrs. Miller from Ms. Spearing, attached to Spearing Aff.)

The CDOC provides inmates with administrative remedies pursuant to a "grievance process" set forth by Administrative Regulation 850-04.  (Aff. of Anthony DeCesaro, ¶ 4, Ex. A-2 to Mot. for Summ. J [hereinafter "DeCesaro Aff."].)  AR 850-04 sets forth that an inmate is required to first attempt to resolve any issue or complaint he has by filing a document known as a Step 1 grievance within 30 days of the date that the inmate knew or should have known of the facts giving rise to his grievance, to which an appropriate CDOC staff person will respond in writing.  (*Id.*, ¶ 5.)

If the inmate is not satisfied with the result of the Step 1 grievance, he must then proceed to file Step 2 grievance within five days of the response to the Step 1, to which a written response is provided.  (DeCesaro Aff., ¶ 6.)  If the inmate is unsatisfied with the response to his Step 2 grievance, he must then proceed to file a Step 3 grievance within five days of the response to the Step 2 grievance.  (*Id.*, ¶ 7.)  The Step 3 grievance is the final step in the CDOC grievance process, and Mr. DeCesaro states that if an inmate does not timely file a Step 3 grievance, he has not exhausted his administrative remedies.  (*Id.*, ¶ 8.)

Mr. DeCesaro is employed as a Step 3 Grievance Officer for the CDOC.  (DeCesaro Aff., ¶ 1.)  As part of his job duties, he investigates and answers the Step 3 grievances filed by inmates incarcerated in the CDOC.  (*Id.*, ¶ 3.)  He is also the custodian of records for Step 3 grievances.  (*Id.*)  Inmates may file grievances concerning restrictions on visiting privileges.  (*Id.*, ¶ 9.)  Mr. DeCesaro reviewed the CDOC's records concerning the filing of grievances by Forrest Miller, to determine whether he filed grievances concerning the denial of visitation with his mother.  (*Id.*,

¶ 10.)  Mr. DeCesaro found no record that Mr. Miller filed any grievances concerning restrictions on visitation Margaret Miller, or regarding any other matter concerning visitation.  (*Id.*, ¶ 11.)  As a result, Defendant asserts that Mr. Miller did not complete the 3-step grievance process provided by the CDOC.  (*Id.*, ¶ 12.)

III.   ANALYSIS

   A.   Summary Judgment Standard

      A.   Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

   B.   Whether Summary Judgment is Appropriate in Favor of Defendant

      1.   Whether the Request for Injunctive Relief is Moot

Defendant argues that the claim for injunctive relief is moot because Ms. Spearing's Affidavit demonstrates that the prohibition on visitation between the

Plaintiffs has been lifted. (Spearing Aff., ¶¶ 3-5.) Further, Defendant points out that Plaintiffs have not sought monetary damages. Accordingly, Defendant asserts that there is no longer a live controversy in the case and that summary judgment should be granted as to Plaintiffs' claim for injunctive relief.

Turning to my analysis, "[t]he mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.'" *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quotation omitted); *see also United States v. Juvenile Male*, ___ U.S. ___, 131 S. Ct. 2860, 2864 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'") (quotation omitted). Thus, claims for injunctive relief must be dismissed on grounds of mootness unless the controversy exists at all stages of the proceedings, "not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

"For example, once a prisoner is transferred to a different institution, his request for . . . injunctive relief of allegedly unconstitutional practices at a particular institution becomes moot. *Preiser*, 422 U.S. at 399-403. Similarly, a request for injunctive relief is moot if the prisoner has received the relief requested. *See, e.g., Neely v. Ortiz*, No. 06-1314. 2007 WL 1748510, at *2 (10th Cir. June 29, 2007) (unpublished) (denying request for injunctive relief as moot where plaintiff requested that the court order the prison to give him Interferon treatment and, before the court ruled, prisoner began such

treatment)[1]; *X. v. Willingham*, 386 F.2d 153, 154 (10th Cir. 1967) (affirming dismissal of case as moot where judicial determination of rights of inmates of Black Muslim faith and an enforcement of their rights through judicial process was rendered unnecessary by policy statement on rights of Black Muslims issued and effectuated by prison warden during course of trial of inmate's petition for injunctive relief against the warden).

In the case at hand, the Complaint requests that "the Court enter a permanent injunction against the Defendant requiring him to approve and permit visitation between Mr. Miller and his mother." (Compl. ¶ 15.) Plaintiffs do not dispute that, after this case was commenced, their visitation rights were restored. Accordingly, the injunctive relief they sought has been rendered moot. Again, Plaintiffs do not dispute this.

Plaintiffs argue, however, that the Court should apply an exception to the mootness doctrine. I first address the exception to mootness where claims are capable of repetition, yet evade review. *See Jordan*, 654 F.3d at 1034. This is a "narrow" exception that should only be used in "exceptional situations." *Id.* at 1034-35. Two prerequisites are required for this exception to apply: "(1) the duration of the challenged action must be too short to be fully litigated prior to its cessation or expiration; and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Hain v. Mullin*, 327 F.3d 1177, 1180 (10th Cir.2003) (en banc).

---

[1] I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case. 10th Cir. R. 32.1(A).

I find that Plaintiffs have not shown the applicability of this exception.  First, Plaintiffs have not shown or even argued that the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration.  "'Most cases utilizing this [exception] have involved official action that *by its very nature* could not, or probably would not be able to be adjudicated while fully 'live.'" *Wyoming v. United States Dep't of Interior*, No., 2012 WL 624126, at *6 (10th Cir. Feb. 29, 2012) (quoting *Dow Chem. Co. v. EPA*, 605 F.2d 673, 678 n. 12 (3d Cir.1979) (emphasis added)).  In other words, the inquiry should turn on whether something inherent exists in the nature or structure of the governmental action that makes it necessarily of short duration."  *Id.*  Here, there is nothing inherent in the nature or structure of the prison's action denying visitation between the Plaintiffs that makes it necessarily of short duration.

I also find that Plaintiffs have not shown that there is a reasonable expectation that they will be subjected to the same action again.  While the AVCF Visiting Officer initially relied on Mr. Ybarra's recommendation that visitation be terminated due to Mrs. Miller's possible involvement in the criminal activities for which Mr. Miller is incarcerated, Defendant as the Warden of AVCF later decided that Mrs. Miller could visit Forrest Miller despite this recommendation.  Thus, the reason that the prison used to initially terminate visitation has now been considered and rejected by the Warden as a basis to deny visitation, and is not a basis to deny visitation in the future.[2]  Instead,

---

[2] The Reply Brief asserts that when Defendant reconsidered Mrs. Miller's request for visitation, he did so in light of the prison's records regarding Mr. Miller's disciplinary history, his status with regard to sex offender treatment, any history of incidents during the periods in which Mr. Miller and Mrs. Miller had previously had visitation, and the prison's capacity to provide adequate monitoring if visits should resume. (Reply Br. ¶ 12) (citing Second Aff. of Penny Spearing, ¶ 13-14.)  These factors had not been considered in conjunction with Mr. Ybarra's recommendation previously.  In consideration of these factors, and in

Plaintiffs can only be denied visitation if they violate the normal policy and procedures of visitation requirements.

Plaintiffs also rely on the voluntary cessation exception to mootness – that Defendant's voluntary cessation of the visitation restriction between Plaintiff after the filing of this suit means that the case is not moot because Defendant is free to resume the restriction at any time. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010). "'[T]his exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct.'" *Id.* (quotation omitted). "Voluntary actions may . . . moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quotation omitted).

"'[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quotation omitted). "The party asserting mootness bears the 'heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again.'" *Id.* at 1116 (quotation omitted). "A case 'cease[s] to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency. *Id.*

---

consultation with the CDOC's counsel, Defendant determined that the prison could provide adequate supervision of visits between Plaintiffs to address safety, security, and rehabilitative concerns. Accordingly, the prohibition on visitation was lifted. (*Id.* ¶¶ 13-14) (citing Second Aff. of Spearing Aff., ¶¶ 15-16.)

In the case at hand, I find that this exception also does not apply. Under the first part of the test discussed previously, I can say with assurance that there is no reasonable expectation that the alleged violation will occur. *Rio Grande Silvery Minnow*, 601 F.3d at 1117. As discussed previously, it appears that the basis for the initial restriction on visitation – the mental health employee's recommendation that visitation be terminated due to Mrs. Miller's possible involvement in child abuse – has been considered and rejected by the Warden as a reason to deny visitation. Further, while not dispositive to my ruling, Defendant has represented that absent a change in circumstances, such as future criminal misconduct on the part of either Plaintiff, violation of prison rules, disruptive behavior during visitations, or other such factors, there are no plans to reapply the former prohibition on visitation between Mrs. Miller and her son Forrest Miller. (Reply Brief at 5, ¶ 17.) Finally, the Warden's interim action of allowing visitation to be resumed has "completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1117.

In short, Plaintiffs have not shown "reluctant submission by governmental actors and a desire to return to the old ways.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1117. Instead, the possibility of a recurrence of this restriction is only a speculative contingency. Accordingly, I reject Plaintiffs' argument that the voluntary cessation exception to mootness applies in this case.

Finally, Plaintiffs argue that their request for attorney fees and costs is not moot. Again, I disagree. The Supreme Court has held that in order to permit an award of attorney's fees under statutes such as 42 U.S.C. § 1988, there must be a "'material

alteration of the legal relationship of the parties'", such as by an enforceable judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001). The *Buckhannon* court rejected the so called "catalyst theory" that allowed an award of fees when there was no judicially sanctioned change in the legal relationship of the parties. *Id.* at 605. It further held, relevant to this case, that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* Here, there has not been a material alteration of the legal relationship of the parties as defined by the Supreme Court. Defendant's voluntary change in conduct is not sufficient to permit an award of attorney fees and costs.

Based on the foregoing, I find that this case must be dismissed as moot. There is no longer an actual and justiciable controversy. Accordingly, I find that Defendant's Motion for Summary Judgment must be granted on this basis.

        2.    <u>Whether Summary Judgment is Appropriate Because Plaintiffs Failed to Exhaust Administrative Remedies</u>

In addition to mootness, I also find that summary judgment in favor of Defendant is appropriate as to Plaintiff Forrest Miller's claims because he failed to show exhaustion of administrative remedies. Under the Prison Litigation Reform Act ["PLRA"], "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a). Thus, under the PLRA, "'a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court.'" *Kinkead v. Durborow*, No. 11-5120, 2012 WL 1035388, at *2 (10th Cir. March 29, 2012) (unpublished) (quoting *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir.2010)). "'A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner 'may only exhaust by following all of the steps laid out' therein." *Kinkead*, 2012 WL 1035388 at *3 (quoting *Little*, 607 F.3d at 1249.)

In this case, as discussed in Section II, *supra*, the grievance process consisted of three steps. Plaintiffs have not shown that Forrest Miller filed a Step 1 grievance within 30 days of the date that he knew or should have known of the facts giving rise to his grievance, as required by the grievance process. Further, Plaintiffs have not shown that Mr. Miller filed a Step 2 grievance within five days of the response to the Step 1, or that he filed a Step 3 grievance within five days of the response to the Step 2 grievance. The letters to the AVCF Visiting Officer or the Warden requesting visitation clearly do not comply with this three-step procedure. Further, Plaintiffs have not rebutted Mr. DeCesaro's Affidavit stating that he found no record of grievances concerning visitation by Mr. Miller. Accordingly, Mr. Miller's claims, but not Mrs. Miller's claims, must also be dismissed under the PLRA.[3]

---

[3] The PLRA and its requirement of exhaustion of remedies are not a basis to dismiss Mrs. Miller's claims as, by its terms, the PLRA applies only to prisoners. 42 U.S.C. § 1997e(a); *see also Anderson v. County of Salem*, No. 09-4718, 2010 WL 3081070, at *2 (D.N.J. Aug. 5, 2010) (unpublished); *Netters v. Tennessee Dept. of Correction*, No. 04-2396, 2005 WL 2113587, at *3 n. 3 (W.D. Tenn. Aug. 30, 2005) (unpublished). Thus, in a similar case by prisoners and their family members regarding visitation, another federal district court held that exhaustion of administrative remedies is not an appropriate basis to dismiss the family members' claims since "the administrative remedy process was available only to the prisoners sought to be visited and not those who wished to visit". *Hamilton v. Saxbe*, 428 F. Supp. 1101, 1103 n. 1

IV.     CONCLUSION

In conclusion, for the reasons discussed above, it is

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 9) is

**GRANTED** and Plaintiffs' claims are **DISMISSED.**  Accordingly, it is

ORDERED that the two-day trial to the Court set on October 1 and 2, 2012, and the Final Trial Preparation Conference set for September 17, 2012, at 10:00 a.m. are **VACATED**.

Dated:  April 12, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge

---

(D. Ga. 1976).  I find that the same analysis applies here.  Finally, I note that Mrs. Miller's rights are not coextensive with Mr. Miller's rights, as suggested by Defendant.  The Tenth Circuit has held that a mother who sues for visitation with her inmate son has her own visitation rights protected by the Constitution that are separate and independent from her son's rights.  *Johnson v. Miller*, No.09-6269, 2010 WL 2696818, at *5 (10th Cir. July 8, 2010) (unpublished).